UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: ) | |
| ) | |
| ITEMS DESCRIBED IN ) | Case No. |
| ATTCHEMENT A ) | |
| ) | |
| ALL LOCATED AT ) | |
| Defense Criminal Forensic Laboratory (DCFL) ) | |
| relevant to NCIS investigations of ) | |
| James William Remington ) | |
| ) | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Daniel T. Ryan of the Naval Criminal Investigative Service (NCIS), Washington, DC Field Office being duly sworn under oath, do hereby depose and state:

1. I am a Special Agent with the NCIS, Washington, DC Field Office. I am assigned to the General Crimes Squad which investigates criminal activity violating federal laws involving U.S. Navy and Marine Corps personnel, civilian U.S. Government employees working for the U.S. Navy and Marine Corps, and employees contracted by the U.S. Navy and Marine Corps. I have been an NCIS Special Agent since August 2005, and have received training at the Federal Law Enforcement Training Center in criminal investigations. In addition, during my tenure as an NCIS Special Agent, I have received training pertaining to criminal investigations that involve the sexual exploitation of children. My duties include, but are not limited to, investigating federal criminal statutes involving the sexual exploitation of children pursuant to Title 18 United States Code, Sections 2252 and 2252A.

2. This affidavit is being submitted in support of a search and seizure warrant for the electronic media files within the personal electronic media of James William Remington, which

was originally received through Remington's consent regarding a separate NCIS investigation regarding possession of classified material on his own personal electronic media.

3. As set forth below, there is probable cause to believe that Remington's personal electronic media, there exists evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252A(a)(5)(B), which make it a crime to possess child pornography, and Title 18, United States Code, Sections 2252(a)(2) and 2252A(a)(2), which make it a crime to receive child pornography in interstate commerce by computer.

4. The information in this Affidavit is based on my investigation, my training, knowledge, and experience, and through information that has been related to me through data, reports and other officers or agents involved in this investigation and related subject area. Because this affidavit is being made for the limited purpose of securing a search warrant, I have not included each and every fact known to Your Affiant.

## PERTINENT FEDERAL CRIMINAL STATUTES

4. Title 18, United States Code, Section 2252A, entitled "Certain activities relating to material constituting or containing child pornography," provides, in pertinent part:

(a) Any person who –

(1) knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography;

(2) knowingly receives or distributes –

(A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or

(B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or

transported in or affecting interstate or foreign commerce by any means, including by computer;

(3) knowingly - (A) reproduces any child pornography for distribution through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer;

. . . .

(5)(B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, shall be punished as provided in subsection (b).
18 U.S.C. § 2251(a)

5. Title 18, United States Code, Section 2251(a) prohibits any person who "uses...any minor to engage in ...any sexually explicit conduct for the purpose of producing any visual depiction of such conduct ... if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce ... if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer...."

6. Title 18, United States Code, Section 2256(1) defines the term "minor" as any person under the age of eighteen years. Title 18, United States Code, Section 2256(8) defines "Child Pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is

indistinguishable from that of a minor engaging in sexually explicit conduct; or, (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."

7. Title 18, United States Code, Section 2256(2) defines "sexually explicit conduct" as actual or simulated:

> (i) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) Bestiality;
>
> (iii) Masturbation;
>
> (iv) Sadistic or masochistic abuse; or
>
> (v) Lascivious exhibition of the genitals or pubic area of any person.

8. Title 18, United States Code, Section 2256(5) defines "visual depiction" as including undeveloped film and videotape, and data stored on computer disk or by electronic means that is capable of conversion into a visual image.

## DEFINITIONS

The following definitions apply to this Affidavit and Attachment B to this Affidavit:

9. "Child Pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

10. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

11. "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

12. "Minor" means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

13. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

14. "Internet Service Providers" or "ISPs" are commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a

telephone line or through a cable system, and can access the Internet by using his or her account name and password.

15. "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level, or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and, .edu for educational organizations. Second level names will further identify the organization, for example usdoj.gov further identifies the United States governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

16. "Log Files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

17. "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

18.     "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

19.     "Uniform Resource Locator" or "Universal Resource Locator" or "URL" is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

20.     The terms "records", "documents", and "materials", as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

## BACKGROUND REGARDING SEIZURE OF COMPUTERS

21. Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, I know that searches and seizures of evidence from computers commonly require agents to seize most of the computer items (hardware, software and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment. That is almost always true because of the following:

22. Computer storage devices (like hard drives, diskettes, tapes, laser disks, and others) store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she may store it in random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This examination process can take weeks or months, depending on the volume of the data stored, and it would be impractical to attempt this kind of data search on-site.

23. Searching computer systems for criminal evidence is a highly technical process requiring expert skills in a properly controlled environment. The vast array of computer hardware and software available today requires even computer experts to specialize in some systems and applications. It is difficult to know before a search which expert should analyze the system and its data. A search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, and other encrypted files. Because computer evidence is extremely vulnerable to tampering and destruction (both from external sources and from code embedded in the system as a "booby-trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

24. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices, as well as the central processing unit ("CPU"). In cases like this one, where the evidence consists partly of graphic files, the monitor and printer are also essential to show the nature and quality of the graphic images that the system can produce. In addition, the analyst needs all assisting software (operating systems or interfaces, and hardware drivers) and any applications software, which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instructional manuals or other documentation and security devices. Moreover, searching computerized information for evidence or instrumentalities of crime commonly requires the seizure of the entire computer's input/output periphery devices (including related documentation, passwords and security devices) so that a qualified expert can accurately retrieve the system's data in a controlled environment. Peripheral devices, which allow users to enter and retrieve data from stored devices, vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly retrieve the evidence sought.

25. In addition to being evidence of a crime, in cases of this sort, there is probable cause to believe that the computer and its storage devices, the monitor, keyboard, printer, modem and other system components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law, and should all be seized on that basis alone. Accordingly, permission is sought herein to seize and search computers and related devices consistent with the scope of the requested search.

## BACKGROUND REGARDING THE
## INTERNET/COMPUTERS AND CHILD PORNOGRAPHY

26. I have been trained in the investigation of crimes involving the sexual exploitation of children. I also own my own computer, have personal knowledge of the operation of a computer, and have accessed the Internet since the early 1990s. Based on this training and knowledge, and the experience of other law enforcement personnel involved in this investigation, I know the following:

27. The Internet is a worldwide computer network that connects computers and allows communications and the transfer of data and information across state and national boundaries. A user accesses the Internet from a computer network or Internet Service Provider ("ISP") that connects to the Internet. The ISP assigns each user an Internet Protocol ("IP") Address. Each IP address is unique. Every computer or device on the Internet is referenced by a unique IP address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 255. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISP's employ dynamic IP addressing; that is, they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet. The ISP logs the date, time and duration of the Internet session for each IP address and

can identify the user of that IP address for such a session from these records, depending on the ISP's record retention policies.

28.     Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and distribute it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a preferred method of distribution and receipt of child pornographic materials.

29.     The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy or compact disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 250 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the

crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

30. With Internet access, a computer user can transport an image file from the Internet or from another user's computer to his own computer, so that the image file is stored in his computer. The process of transporting an image file to one's own computer is called "downloading". The user can then display the image file on his computer screen, and can choose to "save" the image on his computer and/or print out a hard copy of the image by using a printer device (such as a laser or inkjet printer).

31. Importantly, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily-available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file

was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

### **CHARACTERISTICS COMMON TO INDIVIDUALS INVOLVED IN RECEIVING CHILD PORNOGRAPHY AND WHO HAVE A SEXUAL INTEREST IN CHILDREN AND IMAGES OF CHILDREN**

32.  Based on my previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and receive multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a. Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Individuals who have a sexual interest in children or images of children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior

has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## BACKGROUND OF INVESTIGATION

33.     On August 2, 2012, LCDR James William Remington consented to have multiple forms of his personal electronic media forensically examined pursuant to an investigation into possible mishandling of classified information being conducted by NCIS Special Agent Christopher Capps.

34.     On September 13, 2012, the forensic examiner, Robert Hunter, informed Special Agent Capps that multiple digital picture files of possible child pornography where discovered on the electronic media belonging to Remington. Hunter had not taken affirmative steps during his forensic examination to search for evidence of child pornography, but was reviewing the media for unlawful retention of national defense and/or classified information. During that review, Hunter came across three pictures of young girls engaged in sexual intercourse. Another four pictures showed different young girls in various naked poses with the focus of the pictures on their genitalia. All seven of the pictures were found on an external hard drive used by Remington for data storage.

35.     Also during the course of the forensic examination, Hunter performed a search and review of all recoverable Internet History on the submitted media. While reviewing the Internet History for websites or searches possibly indicative of transfer of classified data, Hunter found searches for the terms "Lolita" and "teen." These searches were conducted on the website "500px.com." These searches were found on the HP laptop containing the Windows 7 operating system.

36. During a prior interview by Special Agent Capps of Remington, Remington made partial admissions that he has searched the internet for information related to the name "Lolita." Remington declined Special Agent Capps' request for a second interview, subsequent to the initial forensic examination findings. Forensic review has been suspended pending a search warrant in order to pursue further forensic examination of Remington's electronic media, relevant to child pornography.

## CONCLUSION

37. Based on the foregoing, there is probable cause to believe that Remington's electronic media, stored on computers at DCFL contain further evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 2252 and 2252A. The items and records to be seized, and the search procedure to be followed, are more particularly described in Attachment B.

38. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

_____
Special Agent Daniel T. Ryan
Naval Criminal Investigative Service

SUBSCRIBED and SWORN
before me this XXXX day of January 2013

_____
The Honorable
United States Magistrate Judge
Washington, DC